# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>-against-<br><br>UNIVERSITY OF SOUTH CAROLINA, HARRIS PASTIDES, individually and as agent for University of South Carolina, ALISA LIGGETT, individually and as agent for University of South Carolina, CARL WELLS, individually and as agent for University of South Carolina, DENNIS PRUITT, individually and as agent for University of South Carolina.<br><br>Defendants. | Civil Action No. 3:18-cv-161-TLW-PJG |

## BRIEF IN SUPPORT OF MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

## INTRODUCTION

The University of South Carolina has violated the Due Process rights of Plaintiff guaranteed by the Fourteenth Amendment of Constitution, suspended him for the duration of 2.5 years from the University, and is intending to revoke his F-1 student visa which will lead to his immediate deportation from the United States.

## Facts

**1. *USC violated Plaintiff's due process rights and manipulated the rules of its own contract in order to reach an outcome deeming Plaintiff responsible for the allegations held against him, and allow for his suspension from the University to take place.***

After a fellow USC female undergraduate student falsely accused Plaintiff of sexual misconduct and filed a complaint on August 22, 2017 to the Office of Equal Opportunity Programs, Defendant Carl Wells modified the complaint on August 23, 2017 at 11:17:18 am. Equal Opportunity Programs Investigator Kevin Sheppard investigated the allegations against Plaintiff and found him responsible for non-consensual sexual touching/penetration but not responsible for stalking and involuntary restraint. A hearing was scheduled for October 13, 2017, during which the complainant could pursue her complaint and answer Plaintiff's questions regarding the allegations held against him. However, the complainant failed to attend the hearing and as a result Plaintiff was found responsible for nonconsensual sexual penetration but not responsible for nonconsensual touching and not responsible for dangerous behaviors-intimidation, coercion, etc. (Exhibit A). As of sanctions, the hearing panel determined that suspending Plaintiff due to his visa status would be a punitive punishment and does not provide for knowledge and growth and instead, restricted him from all campus areas except his place of employment along with several other sanctions (Exhibit A). According to USC's appeal process, both parties were allotted 5 business days to appeal the decision of the hearing panel and appeals should be submitted within the 5 business days and must either be based on a "procedural error" that has significantly prejudiced the "findings" of the hearing panel or be based on "new evidence". (Exhibit B) None of the parties appealed the decision of the hearing panel within the 5 business days and the window for appeals

process closed on Friday October 20, 2017. The complainant was not satisfied with the decision of the hearing panel, yet she failed to appeal the decision in a timely manner. However, she appealed the decision of the hearing panel after 7 business days on Tuesday October 24, 2017 and in her appeal letter accused Office of Student Conduct's hearing officer Erin Kitchell of convincing her not to attend the hearing and taking Plaintiff's side and demanded a new hearing and plaintiff's suspension. (Exhibit C) Defendant Liggett notified Plaintiff that the appeal has been received after 7 business days and that he also is given 7 business days to appeal (Exhibit D). Since the appeal has been filed untimely, Plaintiff used the appeal opportunity to object the decision of Office of Student Conduct about accepting the complainant's untimely appeal (Exhibit E). On November 29, 2017, Title IX Appellate Review Committee reviewed the appeals and determined that the fact that Plaintiff was not suspended due to his visa status was a "procedural error" and ordered that this matter needed to be reheard. The Committee also mandated that Plaintiff's visa status should not be given consideration in determining a decision in the rehearing. (Exhibit F) The Committee's decision was unconstitutional, irrational, arbitrary, and conspiratorial. The decision provided grounds for double jeopardy, and determined the outcome of the new hearing prior to the second hearing. Basic fairness is only achieved when the effect of the sanction on a person's life is considered and this can by no means constitute a "procedural error". As a result of the new hearing on December 14, 2017, the hearing panel found Plaintiff responsible for all the sexual misconduct allegations and suspended him for 2.5 years from the University knowing that it will result in Plaintiff's deportation due to his visa status (Exhibit G). Plaintiff timely appealed the decision of the hearing panel as he was instructed in the Letter of Determination on Thursday, December 19, 2017, five business days after the receipt of the Letter of Determination from Office of Student Conduct on Friday December 15, 2017 (Exhibit H). On January 17, 2018, The Title IX Appellate

Review Committee upheld the decision of the hearing panel and notified the Director of International Student Services Jody Pritt, to revoke Plaintiff's visa status through email (Exhibit I). Plaintiff has exhausted all the administrative remedies available to him and there is no adequate remedy at law to prevent the irreparable harm imposed on Plaintiff.

## 2. The immigration and other consequences of the suspension.

Plaintiff's suspension from USC carries dire immigration consequences. His F-1 student visa is dependent on his enrollment at USC. Since that enrollment has ceased, he will be subject to removal, also known as deportation. In case he becomes deported, the information about his termination at USC and deportation from the United States will always reflect in the SEVIS system and in case he decides to return to the United States in the future, the immigration officers will observe this deportation on his records. In addition, according to the travel ban for six Muslim majority Countries[1], Iran along with other Countries are facing an extreme restriction in traveling to the United States. Most visa applications from citizens of these Countries are denied, and student F-1 visas are issued under extreme level of scrutiny. Plaintiff will probably not be able to obtain another student visa from the United States embassy again. In addition, since Plaintiff is a Ph.D. student at USC, he is required to constantly perform academic research in order to be enrolled in his program and his suspension from USC for 2.5 years will result in his expulsion from his program and the University. In other words, Plaintiff will be obligated to abandon his education and employment prematurely while he has not received any degree from this institution.

For several years prior to Plaintiff's arrival in the United States, he has worked diligently toward gaining admission to USC; learning English, maintaining his GPA, and excelling in his

---

[1] *See the Supreme Court ruling: https://www.washingtonpost.com/politics/courts_law/supreme-court-allows-full-enforcement-of-trump-travel-ban-while-legal-challenges-continue/2017/12/04/486549c0-d5fc-11e7-a986-d0a9770d9a3e_story.html?utm_term=.664874d7ca99*

research work so that he could have a chance to continue his graduate level education in the United States. Since arriving in the United States, Plaintiff has continued with the same work ethic toward earning his Ph.D. degree from USC. Plaintiff has successfully passed all graduate level courses in his department, his research plan and research proposal have been accepted, and he is on track to graduate from USC in Spring 2019.

Although Plaintiff has been respectful, compliant, and cooperative, Defendants intentionally violated his due process rights, so as to ensure the outcome of his full responsibility, his suspension from USC, deportation from the United States, and fulfillment the precise demands of the complainant be reached.

Plaintiff is a citizen of Iran. Due to recent unrest in his home Country, Plaintiff does not feel safe to return home. Many citizens have been arrested without cause, and many have lost their lives. The future in Iran is extremely volatile, and to be forced to abandon his education and employment at USC and be deported to Iran is a severe harm. This decision is unjust, as Defendants failed in their duty to preserve Plaintiff's constitutional rights and violated their contract with Plaintiff.

In addition to the unjust nature of this case, and the dangers faced by Plaintiff in the event of deportation, the consequences of the decision of the appeal committee extend beyond Plaintiff's life and safety. Plaintiff's father suffers from heart disease. Having had open-heart surgery in 2012, he has since been under strict orders from his physician to not become stressed or emotionally distressed under any circumstances. Plaintiff is deeply concerned with the mental, emotional, and physical toll that his father will experience should he become aware of Plaintiff's suspension, deportation, or abandonment of his education and employment at USC prematurely.

Plaintiff has documented all the correspondence with Defendants since the first time the complainant filed a complaint and has rigorously attempted to follow all Federal and Local rules of Civil Procedure in order to succeed in this matter. Plaintiff humbly and respectfully requests this court to enjoin Defendants from suspending him and revoking his visa status until this matter is heard in a preliminary injunction hearing.

## ARGUMENT

**Defendants should be enjoined from enforcing the disciplinary sanctions imposed on Plaintiff because their actions and inactions have violated the Due Process Clause of the Fourteenth Amendment.**

To obtain a temporary restraining order or preliminary injunction, Plaintiff must prove by a preponderance of the evidence[2] that he is (1) likely to succeed on the merits of his claim; (2) that he will suffer irreparable harm in the absence of injunctive relief; (3) that the grant of a preliminary injunction will not result in harm to the nonmoving party that is greater than the harm to plaintiff; and (4) that the public interest favors such relief. [3] "It is well established that a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Kos Pharmaceuticals Inc. v. Andrx Corporation, 369 F.3d 700, 718 (2004) (citing University of Texas v. Camenisch, 451 U.S. 390, 395 (1981)).

### A. Plaintiff is likely to succeed on the merits of his claims because Defendants have violated his due process rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution.

Student disciplinary proceedings at state-funded universities must be conducted in conformity with the Due Process Clause of the Fourteenth Amendment. Goss v. Lopez, 419 U.S.

---

[2] See O'Neill v. Secretary of Navy, 76 F.Supp.2d 641, 645 (W.D. Pa. 1999)
[3] Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010)

565 (1975). To identify "the specific dictates of due process," [4] our district courts consider the three factors identified in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Even a cursory consideration of the second factor, the risk of erroneous deprivation through the challenged procedures, demonstrates a reasonable likelihood that Plaintiff will prevail. It is absolutely obvious that Defendants violated the due process rights of Plaintiff by accepting the complainant's appeal which was submitted untimely and determined the fact that Plaintiff was not suspended constituted a "procedural error" which significantly prejudiced the "findings" of a hearing panel. Defendant's behavior has been biased, discriminatory, unjust and unfair and they have been negligent in preserving Plaintiff's due process rights, have breached their contract with Plaintiff, have discriminated against Plaintiff based on his male sex and nationality, have breached the covenant of good faith and fair dealing, have conspired against Plaintiff so the outcome of his suspension and subsequent deportation be reached, have negligently inflicted emotional distress upon him, have deprived Plaintiff of presumption of innocence required by the preponderance of evidence standard, have tried Plaintiff twice for the same charges, have violated his Fifth and Fourteenth Amendment rights of due process, and failed to consider the credibility issues of the complainant as evidence by her false police report against him and her further false accusations. Upon investigating the credibility of allegations against Plaintiff, USC

---

[4] Furey v. Temple University, 730 F.Supp. 380, 394 (2010). The District Court in Furey determined, on the basis of Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214 (3d Cir. 2009), that the Mathews v. Eldridge factors should be considered in determining the process that is due in school disciplinary proceedings.

officials realized that the allegations are untrue and false, yet managed to try him again, suspend and deport him.

Plaintiff's complaint against Defendants is likely to prevail based on the merits because violation of Title IX regulations, violation of Fifth and Fourteenth amendment rights to due process, breach of contract, breach of covenant good faith and fair dealing, negligence, and intentional infliction of emotional distress has occurred which all constitute valid causes of action against Defendants.

**B.     Failure to enjoin Plaintiff's removal from USC will cause him irreparable harm.**

Irreparable harm is easily demonstrated when a student confronts removal from a university. In Jones v. Board of Governors of University of North Carolina, 704 F.2d 713 (4th Cir. 1983), the Fourth Circuit affirmed the grant of a preliminary injunction ordering reinstatement of a nursing student pending resolution of her due process challenge to disciplinary action taken against her. The Court found that the following considerations demonstrated irreparable harm:

> [Plaintiff Jones] will be barred from taking courses during the spring semester, delaying the time at which her ability to work as a nurse will come to fruition; she will have a gap in her education which she will be forced to explain throughout her professional life; and she will be deprived of the opportunity to complete her education with her fellow classmates.

Id. at 716. The same is true of Plaintiff. He is presently barred from finishing his coursework in a demanding curriculum, and will be 2.5 years behind if he manages to obtain the necessary immigration clearance to return to the United States to complete his education. He will have a "gap" of an entire 2.5 years and 5 academic semesters to explain to his employers, and he will be unable to finish his education with his fellow colleagues in a demanding curriculum where peer support is an integral aspect of the educational process. The most immediate injury will be revocation of Plaintiff's student visa and involuntary departure or removal from the United States. The process of obtaining a student visa is extremely tedious for Iranian students pursuing their

education in the United States. Having suspension from USC for sexual misconduct allegations and deportation on his SEVIS records, Plaintiff will most likely fail to obtain another student visa from the United State's embassy.

### C. The grant of a preliminary injunction will not cause greater harm to USC than to Plaintiff.

Defendants can point to no evidence that Defendants will suffer any semblance of the catastrophic consequences confronting Plaintiff. So far as Defendants may claim that Plaintiff is a "danger" to the student community, that assertion is negated by the following facts: (a) Plaintiff was originally found not responsible for most of the allegations against him in the first hearing; (b) Plaintiff has consistently received excellent reviews and evaluations regarding his ethics and teachings by his students; (c) Plaintiff was awarded the "Best Teaching Assistant Award" by Chemistry Department at USC on September 15, 2017 which was based on his student's comments and evaluations; (d) Plaintiff is trusted and respected by everyone in his Chemistry Department and place of employment including Dr. Richard Adams (Plaintiff's Supervisor), Dr. John Ferry (Director of Graduate Students), Dr. Ken Shimizu (Chair of the Department), and Dr. Amy Taylor-Perry and Dr. Leslie Lovelace (Chemistry Instructors); (e) Plaintiff has never been arrested or charged criminally; (f) Plaintiff has mandated good standing in a difficult curriculum.

Because Defendants are state actors, they have no cognizable interest in maintaining an adjudicatory regime that dispenses with traditional safeguards and rights long recognized as essential to the procedural due process guaranteed by the Fourteenth Amendment.

### D.     It is in the public interest to enforce constitutional norms of due process.

The public interest almost always favors the applicant for relief if the applicant demonstrates both a likelihood of success on the merits and irreparable injury. AT & T Co. v. Winback & Conserve Program, 42 F.3d 1421, 1427 n. 8 (3d Cir. 1994). Most significantly,

however, it is simply axiomatic that the public interest always favors the application of constitutional norms.

## CONCLUSION

As fully discussed in this Brief, Plaintiff will suffer an irreparable and imminent harm if the Temporary Restraining Order and/or Preliminary Injunction is not granted. Plaintiff has exhausted all the administrative remedies available to him and there is no adequate remedy at law to prevent the irreparable harm. Since Plaintiff's ability to pursue this litigation is restrictedly bound to his presence in the United States and his deportation will result in his removal from the Country, Plaintiff needs an emergency temporary restraining order enjoining Defendants from enforcing suspension on him and from entering any notations or remarks on his SEVIS or visa records. Notice to the adverse party is not required since there is no other means to protect Plaintiff's interest, irreparable harm is imminent, and most importantly, Defendants will not receive any harm from Plaintiff's delay of suspension for the duration of 10 days. This emergency temporary restraining order shall be effective immediately unless otherwise modified by the subsequent order of this court and remain in place until this matter is heard within 10 days of the issuance of the order.

Respectfully submitted,

_____

January-22-2018
date