IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>-against-<br><br>UNIVERSITY OF SOUTH CAROLINA, HARRIS PASTIDES, individually and as agent for University of South Carolina, ALISA LIGGETT, individually and as agent for University of South Carolina, CARL WELLS, individually and as agent for University of South Carolina, DENNIS PRUITT, individually and as agent for University of South Carolina.<br><br>                    Defendants. | Civil Action No. 3:18-cv-161-TLW-PJG |

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

### Introduction

Pursuant to the recommendation of the United States Magistrate Judge, Honorable Paige Gossett, and upon further correspondence and communication with University of South Carolina's ("USC's") International Student Service's officials, Plaintiff hereby moves for another Motion for Temporary Restraining Order (TRO) and/or preliminary injunction since the level of irreparable harm against Plaintiff has substantially increased and should the Temporary Restraining Order not be granted, Plaintiff's presence in the United States will be deemed illegal.

## Facts

### A) *Defendants have already terminated Plaintiff's SEVIS records and asked him to leave the Country immediately.*

1. The facts set forth in the Verified Complaint (Compl. ¶¶ 1-107, ECF No. 1 at 2-25), Motion for TRO (ECF No. 4), and Brief in Support for Motion for TRO (ECF No. 9) are incorporated herein by reference.

2. On Friday January 19, 2018, Plaintiff moved for a Temporary Restraining Order to enjoin Defendants from enforcing suspension and other disciplinary sanctions against him and to further enjoin them from entering any notation or remarks on his SEVIS and visa records.

3. On Monday January 22, 2018, the United States Magistrate Judge, Honorable Paige J Gossett, recommended at that the aforementioned motion be denied since:

> "Here, the court finds Doe fails to show that immediate and irreparable injury, loss, or damage will result before the defendants have an opportunity to be heard on this matter. Doe alleges only that the University can now report his suspension and that the Department of Homeland Security may decide to institute deportation proceedings against Doe. Thus, Doe fails to satisfy the immediacy requirement in Rule 65(b)(1)"

And,

> "Accordingly, Doe has failed to meet Rule 65(b)'s standard for the issuance of a temporary restraining order without notice. Thus, to the extent his motion seeks an ex parte restraining order, it should be denied." (ECF No. 10 at 2-3)

4. There has been further important correspondence with the Office of International Student Services at the University of South Carolina ("USC") before and after Plaintiff moved for the Temporary Restraining Order on January 19, 2018, which begged for further communication and debate before this matter be brought to court.

5. As mentioned in the Motion for TRO, in the event that a student is charged with a crime or faces university discipline, the University's Designated School Officials ("DSO's")

have 21 days to enter the information onto the SEVIS (Student and Exchange Visitor Information System) system. ((Mot. for TRO. ¶¶ 4-11, ECF No. 4 at 2-4),)

6. In order to confirm such information, Plaintiff consulted with the Director of International Student Services, Ms. Jody Pritt, on Friday December 15, 2017, only one day after his second hearing.

7. Plaintiff told Ms. Pritt that he is intending to appeal the decision of the hearing panel and his suspension might be overturned which depends on the discretion of Title IX Appellate Review Committee.

8. Ms. Pritt advised Plaintiff that her office has not yet been notified and from the time her office is notified, they have 15 days to enter the information on his SEVIS records and Plaintiff has to leave the Country within those 15 days.

9. The decision of the hearing panel became finalized on January 17, 2018, as Title IX Appellate Review Committee decided to uphold the decision of the hearing panel.

10. According to Ms. Pritt's previous statement, International Student Services had 15 days (until February 1, 2018) to enter the suspension in Plaintiff's SEVIS records whenever they become notified.

11. At the same time Title IX Appellate Review Committee notified Plaintiff of their decision, Ms. Pritt has also been notified and subsequently, she requested the Office of International Student Service's Manager of Immigration Compliance, Ms. Raquel Herodeck, to "immediately" terminate Plaintiff's SEVIS records.

12. On January 18, 2018, Plaintiff has been notified through email by Ms. Herodeck that his SEVIS records are terminated and he has to "immediately" leave the Country. (Exhibit A)

13. Plaintiff has also been repeatedly asked to drop all his classes for Spring 2018 semester on two separate occasions by Ms. Herodeck.

14. Plaintiff notified Ms. Pritt about this litigation and asked her to delay the process of terminating his SEVIS records.

15. Ms. Pritt refused to postpone the termination of Plaintiff's SEVIS records to a later time and told Plaintiff that unless there is a court order regarding this issue, she will not reinstate his SEVIS and visa records.

16. Defendant's have subjected Plaintiff to an irreparable harm by terminating his student SEVIS records on January 18, 2018. As of today, January 26, 2018, Plaintiff is out of status in the United States and should the Temporary Restraining Order to enjoin Defendants to reinstate Plaintiff's SEVIS records not be granted, his presence in the United States will be illegal and upon arrest by Department of Homeland Security, Plaintiff will face jail time.

**B) Defendants have repeatedly demanded Plaintiff to drop all his classes for Spring 2018 semester.**

17. Plaintiff has also repeatedly been notified to drop all the classes he is enrolled in for Spring 2018 semester since he is no longer a student at USC. (Exhibit A)

18. Plaintiff is enrolled in CHEM 899 class which requires him to actively perform research in his place of employment.

19. Plaintiff has been banned from attending his research laboratory since December 18, 2017 due to his suspension.

20. As of today, January 26, 2018, Plaintiff has not attended his research laboratory for the duration of 37 days due to his suspension from the University.

21. If USC officials force Plaintiff to drop all his classes for Spring 2018 or drop all his classes for him themselves, Plaintiff will not be able to take this class at any time throughout this semester since the deadline for add/drop of classes has already passed.

22. In addition, as a requirement of CHEM 899, Plaintiff is required to actively perform research in the laboratory throughout the Spring semester and failure to do so will result in failing this class.

23. Plaintiff has already been subjected to an irreparable harm caused by Defendant's for not being able to attend his research laboratory during the last month.

24. As a Ph.D. student at USC, Plaintiff is required to be present in the research laboratory at all times during his matriculation and Defendant's have jeopardized Plaintiff's doctoral studies by suspending him and not allowing him to attend his research laboratory.

### C) Plaintiff has lost his employment for Spring 2018 semester as a Graduate Teaching Assistant.

25. Besides his graduate research work in the laboratory, Plaintiff is required to work as a Teaching Assistant ("TA") throughout the semester so his tuition be waived, and he receives a monthly salary from the Chemistry Department.

26. Plaintiff has been notified by Chemistry Instructors Dr. Amy Taylor Perry and Dr. Leslie Lovelace that he is required to attend the Teaching Assistant group meeting on Friday January 19, 2018 and be trained properly in order to be considered "employed" as a TA during Spring 2018 semester.

27. As a result of suspension, Plaintiff was not able to attend the TA group meeting on Friday January 19, 2018, and lost his employment along with tuition waiver for Spring 2018 semester.

28. Due to financial difficulty, Plaintiff has faced difficulties paying his rent, credit card debts, auto loan payments and other necessary payments in order to financially survive in the United States.

29. Plaintiff has already been subjected to irreparable harm by Defendants by losing his employment opportunity for Spring 2018 semester.

## Argument

### Plaintiff will face an irreparable harm if the motion for Temporary Restraining Order enjoining defendants to reinstate his SEVIS records not be granted.

30. In a similar case in the United States District Court for the middle district of Pennsylvania[1] (Doe v. The Penn. State. Univ.), Doe was a Syrian student at Penn State on a student F-1 and became suspended for two semesters from the University while his due process rights have been violated by the University officials. He was facing deportation since the University officials were intending to revoke his visa status. The United States District Judge granted the motion for Temporary Restraining Order since he believed:

"1. Plaintiff has adequately demonstrated that he is reasonably likely to succeed on the merits of his 42 U.S.C. § 1983 claim brought pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution in light of the potential inadequacy of the procedure afforded him by Defendants during a disciplinary hearing that resulted in his two-semester suspension from The Pennsylvania State University ("University")

2. Plaintiff has adequately demonstrated a clear showing of immediate, irreparable harm if Defendants enforce the disciplinary sanctions previously imposed on Plaintiff. Specifically, because of Plaintiff's immigration status, there is a presently existing actual threat that should the alterations to his student status be entered, noticed, or otherwise transmitted by the University, they will result in the initiation of federal immigration proceedings against Plaintiff, with the ultimate consequence of his deportation from the United States and relocation to his homeland of Syria, where he will face the potential for serious bodily harm and related injuries. The Court notes that media coverage in this case, which has already occurred at this early stage of the litigation, makes the indicated

---

[1] Doe v. The Penn. State. Univ. (2015, 4:15-cv-02072-MWB)

harm even more likely and immediate. Plaintiff also will suffer from the deprivation of his right to continue his education in an ordinary and timely manner;

3.  Were the Court to erroneously grant the temporary restraining order, Defendants would not suffer greater harm than Plaintiff would suffer were the temporary restraining order erroneously denied."

31. The same is true of Plaintiff. He is facing deportation and is out of status in the United States which is caused by actions and inactions of Defendants and violation of his due process rights. If Plaintiff's motion for Temporary Restraining Order is not granted, his lack of status in the United States will result in the initiation of federal immigration proceedings against Plaintiff, with the ultimate consequence of his deportation from the United States and relocation to his homeland of Iran, where he will face further emotional and physical injuries as explained in Brief in Support of TRO (Docket Number: )

32. Specifically, a party, such as the Plaintiff here, seeking injunctive relief "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003); Freshpack Produce, Inc. v. VM Wellington, LLC, 2013 WL 50433 (D. Colo., Jan. 3, 2013). Such possible harm can at this juncture of the litigation be avoided by ordering the maintenance of the status quo ante until the merits (if any there be) of Plaintiff's arguments can be evaluated and ruled upon. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981); United States v. *Adler's Creamery*, 107 F.2d 987, 990 (2d Cir. 1939) (holding that its function is to "preserve the status quo ante . . . upon a showing that there would otherwise be danger of irreparable injury."); Freshpack, 2013 WL 50433; SIFMA v. Garfield, 469 F. Supp. 2d 25 (D. Conn. 2007). Such relief is sourced from those powers necessary for the courts to

adjudicate cases in an orderly and efficacious manner. Eash v. Riggins Trucking, Inc., 757 F.2d 562-64 (3d Cir. 1985).

33.     Notice to the adverse party is not required if the immediate and irreparable injury will cause Plaintiff suffer, loss or harm. "[A] trial judge can issue a temporary restraining order without providing notice where 'it clearly appears from specific facts shown by affidavit or by verified complaint that immediate or irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon.'" Zabinski v. Bright Acres Assocs., 553 S.E.2d 110, 120 (S.C. 2001).

34.     Enjoining Defendants to reinstate Plaintiff's SEVIS records will preserve his status quo ante until a hearing is held on this matter in the preliminary injunction hearing while imposes no harm or threat to the Defendants.

35.     Should this Court does not enjoin Defendants to reinstate Plaintiff's SEVIS records, Plaintiff will be deported by Department of Homeland Security and will lose his "property" (his Ph.D. education at USC) and "liberty" (his presence in the United States) which are guaranteed by the Fifth Amendment of the constitution to be protected.

36.     If the court deems it necessary to have a hearing on this motion, Plaintiff will be available to the Court at any time as soon as possible upon proper notice.

37.     If the court deems it necessary to have a telephone conference with Plaintiff and the adverse party upon this motion, Plaintiff will be cooperative and compliant upon proper notice.

38.     In case the court denies this motion and requires this matter be heard in the preliminary injunction hearing, the adverse party has the legal right to ask for an extension of time in order to properly respond and prepare for the preliminary hearing in which case Plaintiff

will suffer from the irreparable harm and his illegal presence in the United States will be elongated which can result in his arrest and deportation by the Immigration Police of Department of Homeland Security.

39. Grant of this motion can prevent the irreparable harm Plaintiff is facing and maintain his status quo ante until this matter is heard in a preliminary injunction hearing.

40. The Plaintiff has already been subjected to termination of his SEVIS records and should this motion not be granted, he will suffer imminent and immediate harm, suffer, and loss.

41. Plaintiff hereby meets the immediacy requirement of Fed.R.Civ.Pro. 65(b)(1) since he will suffer from an irreparable harm if the relief is not granted.

42. Plaintiff is likely to prevail on the merits of his Fifth and Fourteenth Amendment claims and violations of his due process rights.

43. Defendants will not receive any harm from the reinstatement of Plaintiff's SEVIS records

44. Public interest will be served upon preserving Plaintiff's constitutional norms.

**WHEREFORE,** this court should enter a temporary restraining order and/or preliminary injunction enjoining Defendants to reinstate Plaintiff's SEVIS records and visa status which has been terminated on January 18, 2018, to maintain the status quo ante until this mattered is heard in a preliminary injunction hearing. Furthermore, Defendants must be enjoined from forcing Plaintiff to drop all his classes for Spring 2018 semester.

Respectfully submitted,

01-26-2018