IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John Doe, Plaintiff, | ) | C/A No. 3:18-161-TLW-PJG |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| University of South Carolina; Harris Pastides; Alisa Liggett; Carl Wells; Dennis Pruitt, Defendants. | ) | |

The plaintiff, John Doe,[1] proceeding *pro se*, brings this civil rights action against the defendants. The Complaint has been filed pursuant to 28 U.S.C. § 1915. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Doe's motions for a preliminary injunction. (ECF Nos. 4 & 13.) Following notice to the defendants, the court held a hearing on Doe's motions on February 2, 2018. (ECF No. 37.) In the hearing, the court provided the parties the opportunity to file supplemental briefing and further evidence. (ECF Nos. 37 & 38.) The parties each filed supplemental briefs after the hearing, and the defendants filed exhibits. (ECF Nos. 42 & 44.) Having carefully reviewed the parties'

[1] The court finds that extraordinary circumstances support Doe's litigation of this matter under a pseudonym. See Doe v. Pub. Citizen, 749 F.3d 246, 273 (4th Cir. 2017) ("[I]n exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym.") As explained in more detail below, Doe has demonstrated compelling interests in anonymity in this matter because of the personal and sensitive nature of the underlying facts of this case, which involve allegations of sexual assault. The court finds that the privacy interests of Doe (and the alleged victim, who is also identified by a pseudonym) outweigh the public's interest in access to their identities. Further, the court finds the defendants are in no way prejudiced by Doe's use of a pseudonym, and that using pseudonyms while permitting public access to the court records themselves is narrowly tailored to protect the privacy interests at stake here.

filings and the evidence before the court in accordance with applicable law, the court concludes Doe's motions for a preliminary injunction should be denied.

**BACKGROUND**

Doe, a citizen of Iran, was enrolled as a graduate student at the University of South Carolina ("the University") pursuant to a student F-1 non-immigrant visa. (Compl. ¶¶ 121-23, ECF No. 1 at 27.) However, Doe was suspended from the University on January 17, 2018 as a result of disciplinary violations stemming from another student's allegation against Doe of sexual assault. (Id. ¶ 98, ECF No. 1 at 22.) Doe alleges his visa status requires that he be enrolled as a student at the University, and now that he is suspended, he is subject to deportation by the United States. (Id. ¶ 124, ECF No. 1 at 27.)

The allegations against Doe were raised by Jane Roe,[2] a fellow student, on August 22, 2017 by filing an incident report in the University's Office of Equal Opportunity Programs. (Id. ¶ 31, ECF No. 1 at 5; Incident Report, ECF No. 37-1.) According to Doe, Roe and Doe met through an online dating service, and on March 23, 2017, they met for a date at a restaurant near the University. (Compl. ¶¶ 1-5; ECF No. 1 at 2.) They drove to Doe's house after dinner to watch a movie. (Id. ¶¶ 9-25, ECF No. 1 at 3-4.) As alleged by Roe in her incident report, after arriving at his house, Doe sexually assaulted her and physically restrained her from leaving. (Incident Report, ECF No. 37-1.) Doe denies Roe's allegations and asserts that their encounter was consensual. (Compl. ¶¶ 9-25, ECF No. 1 at 3-4.)

A hearing was held before a panel from the University's Office of Student Conduct on October 13, 2017 to consider Roe's allegations against Doe and determine whether Doe should be

---

[2] See supra note 1.



PJG

disciplined. (Id. ¶ 54, ECF No. 1 at 10-11.) Roe did not attend the hearing, but she wrote a victim impact statement that was read in the hearing by a University staff member. (Id.) The hearing panel found Doe responsible for "non-consensual sexual penetration," and found him not responsible for "offensive touching" and "dangerous behaviors—intimidation, coercion, and abuse." (Id.; Ex. A, Mot. for TRO & Prelim. Inj., ECF No. 9-2 at 1-3.) The hearing panel sanctioned Doe by restricting the areas on campus that Doe could visit, and Doe alleges that the panel did not suspend him because the panel determined that such a punishment would be overly punitive in light of his visa status. (Compl. ¶ 54, ECF No. 1 at 10-11.) After the hearing, on the same day, Doe received a letter by email from the Office of Student Conduct that summarized the hearing and stated that both Doe and Roe had "five university business days from the date the decision letter was sent to submit a written request for an appeal." (Id. ¶ 56, ECF No. 1 at 11; Ex. A, Mot. for TRO & Prelim. Inj., ECF No. 9-2 at 1-3.)

On October 23, 2017, Roe appealed the hearing panel's decision to the University's Title IX Appellate Review Panel ("Title IX Panel"). (Compl. ¶ 60, ECF No. 1 at 12; Liggett Aff. ¶ 5, Def.'s 2d Suppl. to Resp., ECF No. 42-1 at 3.) Doe then cross-appealed on October 25, arguing Roe's appeal was untimely under university policy. (Compl. ¶ 63, ECF No. 1 at 13.) The Title IX Panel ordered that a new hearing panel rehear the case because the original panel improperly considered Doe's academic status and visa status when it fashioned Doe's sanction. (Id. ¶ 64, ECF No. 1 at 13-14.)

A new hearing was held in front of a new panel on December 13, 2017. (Id. ¶ 96, ECF No. 1 at 19-22.) Roe testified in this new hearing, but Doe claims Roe raised new allegations that he was not prepared to defend against. (Id.) The new hearing panel found Doe responsible for "non-



PJG

consensual sexual penetration, offensive touching, and dangerous behaviors—abuse, intimidation, and coercion," and not responsible for "failure to comply—published policies." (Id.; Ex. G, Mot. for TRO & Prelim. Inj., ECF No. 9-2 at 21-25.) The hearing panel suspended Doe from the University for two and one half years, beginning on December 18, 2017. (Compl. ¶ 96, ECF No. 1 at 19-22.)

Doe's appeal of the new hearing panel's decision was denied by the Title IX Panel on January 17, 2018. (Id. ¶¶ 97-98, ECF No. 1 at 22.) On January 18, the University's Office of International Student Services notified Doe by email that his records would be terminated in the electronic database maintained by the United States Department of Homeland Security that tracks students with F-1 visas,[3] and stated that "[a]ccording to immigration regulation you must leave the country immediately." (2d Mot. for TRO & Prelim. Inj. ¶ 12, ECF No. 13 at 3; Ex. A, 2d Mot. for TRO & Prelim. Inj., ECF No. 13-1.)

Doe filed this action on January 19, 2018 by filing a Complaint and his first motion for a temporary restraining order and preliminary injunction. (ECF Nos. 1 & 4.) In the Complaint, Doe expressly raises causes of action pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), the Fifth Amendment's Double Jeopardy Clause, the Fourteenth Amendment's Due Process Clause, and state law causes of action for negligence, breach of contract, and intentional infliction of emotional distress. Doe seeks injunctive relief and damages. Doe filed

[3] The database, known as Student and Exchange Visitor Information System ("SEVIS"), is a system that tracks and monitors schools, exchange visitor programs, and F, M, and J non-immigrants while visiting the United States to participate in the United States's education system. (https://www.ice.gov/sevis).





a second motion for a temporary restraining order and preliminary injunction on January 26, 2018. (ECF No. 13.)

On January 22 and 29, 2018 the court recommended that Doe's motions be denied to the extent Doe sought an *ex parte* temporary restraining order under Rule 65(b) and set a hearing on the preliminary injunction motions for February 2, 2018, at which it heard oral argument from all parties on Doe's motions. (See ECF Nos. 10, 19, 20, & 37.)

**DISCUSSION**

**A. Nature of Relief Sought**

Through his motions, Doe seeks to enjoin the University from imposing the disciplinary suspension against him, (ECF No. 4 at 4), to compel the University to reinstate Doe's SEVIS records and visa status, (ECF No. 13 at 9), and to enjoin the University from forcing him to drop all of his classes for the Spring 2018 semester (ECF No. 13 at 9). Generally, state entities such as the University, and its employees acting in their official capacity, are immune from suits filed pursuant to § 1983. The Eleventh Amendment bars suits by citizens against non-consenting states brought either in state or federal court. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1 (1890). Such immunity extends to arms of the state, including a state's agencies, instrumentalities, and employees. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984); see also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that neither a State nor its officials acting in their official capacities are "persons" under § 1983). While sovereign immunity does not bar suit where a state has given consent to be

sued, or where Congress abrogates the sovereign immunity of a state, neither of those exceptions applies in the instant case.[4]

Here, however, Doe seeks injunctive relief against the University and its employees. Therefore, the court construes Doe's motions as seeking injunctive relief pursuant to Ex parte Young, 209 U.S. 123 (1908). Under Ex parte Young, a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." McBurney v. Cuccinelli, 616 F.3d 393 (4th Cir. 2010); see also Antrican v. Odom, 290 F.3d 178, 184 (4th Cir. 2002) ("This exception to sovereign immunity is based on the notion, often referred to as a fiction, that a State officer who acts in violation of the Constitution is stripped of his official or representative character.") (internal quotations omitted).

The parties dispute whether the injunctive relief sought by Doe is prospective in accordance with the exception recognized in Ex Parte Young, or retroactive, which would render Ex parte Young inapplicable. Compare Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir. 2002) (finding requests for reinstatement to be prospective in nature and appropriately sought pursuant to Ex parte Young); Osteen v. Henley, 13 F.3d 221, 223 (7th Cir. 1993) (finding expelled student's suit against school for reinstatement to school was not barred by the Eleventh Amendment because it sought prospective injunctive relief); Kashani v. Purdue Univ., 813 F.2d 843, 848 (7th Cir. 1987) (collecting cases); and Doe v. Ohio State Univ., 219 F. Supp. 3d 645 (S.D. Ohio 2016) (finding reinstatement from school expulsion is prospective injunctive relief, and therefore, not barred by the

[4] Congress has not abrogated the states' sovereign immunity under § 1983, see Quern v. Jordan, 440 U. S. 332, 343 (1979), and South Carolina has not consented to suit in federal district court. S.C. Code Ann. § 15-78-20(e).





Eleventh Amendment), with Jemsek v. Ryne, 662 F. App'x 206 (4th Cir. 2016) (holding that a physician seeking rescission of a state medical licensing board's order suspending his license and letter of concern was not seeking prospective relief); and Republic of Paraguay v. Allen, 134 F.3d 622, 628 (4th Cir. 1998) (holding that a suit to void a state capital sentence of a foreign national did not seek prospective relief). Because the court finds Doe's motions for a preliminary injunction should be denied on other grounds, the court need not resolve this dispute at this time.

### B. Motions for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Id. at 20; The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds by 559 U.S. 1089 (2010), reissued in part by 607 F.3d 355 (4th Cir. 2010), overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).[5] A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim. Winter, 555 U.S. at 22; Real Truth, 575 F.3d at 345-46; see also Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011). Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. Winter, 555 U.S. at 20-23; Real Truth, 575 F.3d at 347. Only then may the court consider whether the balance of equities tips in the plaintiff's favor. See Real Truth, 575 F.3d at

[5] The portions of Real Truth that were reissued by the Fourth Circuit are Parts I and II found at 575 F.3d at 345-47, which are the sections addressing injunctions that are relied upon in the court's Report and Recommendation.





346-47.[6] Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. Real Truth, 575 F.3d at 347 (quoting Winter, 555 U.S. at 24).

**1. Likelihood of Success on the Merits**

Doe's basis for injunctive relief appears to rest only on his claims for violations of Title IX, the Fifth Amendment's Double Jeopardy Clause, and the Fourteenth Amendment's Due Process Clause.[7] Doe brings these claims pursuant to 42 U.S.C. § 1983. (Compl. ¶ 140, ECF No. 1 at 37.) A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

**a. Fourteenth Amendment—Due Process**

Doe claims the University's disciplinary process violated his right to due process under the Fourteenth Amendment. Specifically, Doe alleges he was deprived of due process because Defendant Wells modified the incident report in which Roe made allegations against Doe; Roe's appeal from the first hearing was filed late; the Title IX Panel instructed the new hearing panel to

---

[6] Based on Winter, the Real Truth Court expressly rejected and overruled Blackwelder's sliding scale approach, which generally allowed a plaintiff to obtain an injunction with a strong showing of irreparable harm even if he demonstrated only a possibility of success on the merits. Real Truth, 575 F.3d at 347; Winter, 555 U.S. at 21-23; see, e.g., Jones v. Bd. of Governors of N.C., 704 F.2d 713, 715 (4th Cir. 1983) (granting a preliminary injunction under the Blackwelder standard).

[7] Consequently, the court will not consider Doe's state law claims for the purpose of the motions for a preliminary injunction.





not consider Doe's visa status or academic status when fashioning a sanction; and Roe made new allegations at the second hearing.

In relevant part, the Fourteenth Amendment provides that "no state shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The adequacy of due process is governed by the balancing test set forth in the United States Supreme Court's decision in Matthews v. Eldridge, 424 U.S. 319, 335 (1976). In Matthews, the Court provided that sufficiency of due process in administrative procedures requires an analysis of the governmental and private interests that are affected, which requires consideration of three factors:

> (1) the private interest that will be affected by the official action,
>
> (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and
>
> (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

State university disciplinary proceedings may implicate the Due Process Clause,[8] which generally requires "the student be given oral or written notice of the charges against him and, if he

---

[8] Courts have generally assumed without deciding that a student has a protected liberty or property interest in continued enrollment at a state college or university. See, e.g., Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002) ("The Supreme Court has assumed, without actually deciding, that university students possess a 'constitutionally protectible property right' in their continued enrollment in a university.") (quoting Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 223 (1985)); Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 73 (4th Cir. 1983) (assuming without deciding plaintiff had a protected liberty or property interest in an honor code proceeding); Lewin v. Med. Coll. of Hampton Rds., 910 F. Supp. 1161, 1165 (E.D. Va. 1996) (collecting cases); see also Doe v. Alger,175 F. Supp. 3d 646, 656-58 (W.D. Va. 2016).





denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Goss v. Lopez, 419 U.S. 565, 581 (1975) (addressing due process requirements in a public high school setting); see also Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 85-86 (1978) ("All that Goss required was an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.' ") (quoting Goss, 419 U.S. at 584). The United States Court of Appeals for the Fourth Circuit has most recently stated that students facing disciplinary action at universities must only be "afforded a meaningful hearing." Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 630 (4th Cir. 2002); but see Goss, 419 U.S. at 584 (suggesting suspensions longer than ten days, or expulsions, may require more formal procedures). Previously, the Fourth Circuit has adopted the summary of minimum due process requirements for disciplinary hearings in an academic setting provided by the United States Court of Appeals for the Fifth Circuit in 1961 in Dixon v. Ala. State Bd. of Ed., 294 F.2d 150,158-59 (4th Cir. 1961). See Henson, 719 F.2d at 73 ("Although Dixon was decided more than twenty years ago, its summary of minimum due process requirements for disciplinary hearings in an academic setting is still accurate today.")[9]

In Dixon, the Fifth Circuit stated,

> [W]e state our views on the nature of the notice and hearing required by due process prior to expulsion from a state college or university. . . . The notice should contain a statement of the specific charges and grounds which, if proven, would justify

[9] Other courts in this circuit, even recently, have adhered to Dixon's standard in similar factual circumstances. See Doe v. Alger, 175 F. Supp. 3d 646, 661 (W.D. Va. 2016); but cf. Doe v. Rector & Visitors of George Mason Univ., 149 F. Supp. 3d 602, 615 n.10 (E.D. Va. 2016) (noting that "although Dixon was decided pre-Mathews, Henson was decided post-Mathews, and therefore Dixon must be understood in this circuit as consistent with Mathews.").





> expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college.

Dixon, 294 F.2d at 158-59.

Beyond setting minimum standards that comport with due process in disciplinary hearings, the Fourth Circuit has also found that significant departures from state government procedures which have induced reasonable and detrimental reliance may, if sufficiently unfair and prejudicial, constitute a procedural due process violation in a university disciplinary hearing. See Jones v. Bd. of Governors of Univ. of N.C., 704 F.2d 713, 717 (4th Cir. 1983) (citing United States v. Caceres, 440 U.S. 741, 752-53 & n.15 (1979)).

Here, the Court finds that Doe's allegations, addressed in turn below, do not clearly show that he was not afforded due process in his disciplinary hearing. Consequently, the court finds Doe has failed to clearly show that he is likely to succeed on the merits of his due process claim.

**i. Modification of the Incident Report**

As to the allegation that Wells modified the incident report in which Roe originally made allegations against Doe, the court finds this allegation is not supported by the record. At the hearing on Doe's motion for a preliminary injunction, Doe explained that this allegation arises from his





realization that a printed electronic copy of the incident report contains a notation at the end of the document that states it was "modified by Carl R. Wells on August 23, 2017," one day after Roe first brought the allegations against Doe. (Incident Report, ECF No. 37-1.) Doe appears to be concerned that Wells may have modified the substance of the incident report without his knowledge and to his detriment. However, Wells submitted a sworn affidavit in which he swears that the only modification he made to the incident report was to add demographic and contact information that was missing from the original version, and which was linked to another University database. (Wells Aff. ¶ 5, Def.'s 2d Suppl. in Resp., ECF No. 42-2 at 2-3.) Wells swears he did not modify the substance of the incident report, (id. ¶ 6, ECF No. 42-2 at 3), and Doe provides no evidence to the contrary. Accordingly, the court finds that this conjectural allegation by Doe does not support a claim that his right to due process was violated by the University's disciplinary process.

**ii. Timeliness of Roe's Appeal**

As to Doe's claim that Roe's appeal from the original hearing was untimely, the court finds such a claim is not supported by the facts in the record at this time and, in any event, fails to suggest a constitutional violation. The University's policies allow for appeals up to five "business days" after a disciplinary hearing. (Ex. 4, Def.'s 2d Suppl. in Resp., ECF No. 42-4 at 2.). Doe's first disciplinary hearing was held on October 13, 2017, a Friday. (Compl. ¶ 54, ECF No. 1 at 11.) Roe filed an appeal on October 24, 2017, which Doe alleges is seven "business days" from October 13. (Id. ¶ 60, ECF No. 1 at 12.) However, Defendant Liggett filed a sworn affidavit swearing that, as a matter of practice, the Office of Student Conduct does not count days when there are no classes for students as "business days" for purposes of deadlines for actions by students. (Liggett Aff. ¶ 5, Def.'s 2d Suppl. in Resp., ECF No. 42-1 at 3.) Liggett also swears that the University's students





were on fall break on October 19 and 20, and that Roe filed her appeal on October 23. (Id. ¶¶ 4 & 6.) Thus, Liggett swears, Roe's appeal was filed on the fourth "business day" after the October 13 hearing. (Id. ¶ 7.) Doe provides the court with no evidence to refute Liggett's statement. Accordingly, the court finds that Doe's allegation that Roe filed a late appeal is unsupported by the evidence in the record. Moreover, Doe identifies no authority to support the proposition that, assuming Roe's appeal was late, a discretionary extension by the University would violate Doe's due process rights, especially considering that the University considered Doe's cross appeal as well. Consequently, the court finds this allegation does not support his claim that the University's disciplinary process violated his right to due process.

**iii. Title IX Panel's Instructions**

Doe also claims that the Title IX Panel instructed the new hearing panel not to consider Doe's visa status or academic status when it determined the appropriate sanction for his offenses. However, the court finds that this allegation does not clearly show that Doe is likely to succeed on the merits of any constitutional claim.[10] As detailed above, due process requires at least that Doe be notified of the disciplinary charges against him and an opportunity to be heard to defend against those charges. See Goss, 419 U.S. at 581. Here, Doe fails to forecast any evidence that the Title IX

---

[10] To the extent Doe relies on the Double Jeopardy Clause with regard to his challenge to the second hearing, he again fails to show a likelihood of success on the merits, as it is well settled that the Double Jeopardy Clause does not apply to academic disciplinary proceedings. See, e.g., Hudson v. United States, 522 U.S. 93, 98-99 (1997) ("The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense[.]") (citing Helvering v. Mitchell, 303 U.S. 391, 399 (1938)); Ctr. for Participant Ed. v. Marshall, 337 F. Supp. 126, 137 (N.D. Fla. 1972) (finding a university disciplinary proceeding was civil in nature, rather than criminal, because it did not involve a loss of life or liberty, and therefore, the Double Jeopardy Clause was not implicated); Paine v. Bd. of Regents of Univ. of Tex. Sys., 355 F. Supp. 199, 203 (W.D. Tex. 1972) (providing that a university's disciplinary rules were civil, remedial, or administrative in nature, and thus, they did not implicate the Double Jeopardy Clause).





Panel's instructions deprived him of a meaningful hearing on remand. See Tigrett, 290 F.3d at 629 (noting in a student expulsion case that the crux of the due process inquiry was whether the students received a meaningful hearing) (citing Mathews, 424 U.S. at 333). Moreover, nothing indicates that the University failed to give an opportunity to both sides to be heard in detail at the second hearing. See Dixon, 294 F.2d at 158-59. Consequently, the court finds Doe fails to clearly show that he is likely to succeed on the merits of his due process claim based on the Title IX Panel's instructions on remand.

**iv. Roe's Allegations in the Second Hearing**

Finally, Doe alleges Roe added new allegations of sexual misconduct in the second disciplinary hearing that Doe was unable to defend against. Doe argues this violated his right to due process because he had no notice of this claim—which asserted coerced oral sex—and was not prepared to defend against it.[11] However, the court finds Doe's allegation is belied by the evidence in the record. The incident report, which Doe alleges he had access to "throughout the whole process," (Compl. ¶ 31, ECF No. 1 at 7), contains the allegations by Roe that Doe now contends were never raised until the second hearing. (ECF No. 37-1 at 1.) Therefore, by Doe's own account, he was on notice that Roe alleged that the oral sex was not consensual. Consequently, the court finds this allegation of procedural error does not demonstrate that the University's disciplinary process violated his right to due process.

---

[11] To the extent Doe also alleges that Roe filed a second incident report detailing violations of the no-contact order against him, and that Roe's reference to the second incident report in the second disciplinary hearing violated his right to due process, the court finds no clear showing of a likelihood of success on the merits, since Doe was found not responsible for those allegations. (Ex. G., Suppl. to Mot. for TRO & Prelim. Inj., ECF No. 9-2 at 22.)





**b. Title IX—Disparate Treatment**

Doe claims the defendants violated his rights under Title IX because the disciplinary hearing process amounted to sex discrimination. However, the court finds Doe has also failed to clearly show he is likely to succeed on the merits of this claim.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A student may raise a claim of disparate treatment in a disciplinary proceeding based on sex pursuant to Title IX. Brzonkala v. Va. Polytechnic Inst. & State Univ., 132 F.3d 949, 961 (4th Cir. 1997) (reversed *en banc* on other grounds) (relying on Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994) (referring to the claim as one for "erroneous outcome discrimination")).[12] To state a claim for disparate treatment, a plaintiff must allege: (1) "a procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse and erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." Doe v. Salisbury Univ., 123 F. Supp. 3d 748, 766 (D. Md. 2015) (quoting Yusuf, 35 F.3d at 715); see also Doe. v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 732 (E.D. Va. 2015) (same).[13]

---

[12] Such a claim is cognizable in a § 1983 action. See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246 (2009).

[13] The Fourth Circuit has found that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq."provide[s] a persuasive body of standards to which we may look in shaping the contours of a private right of action under Title IX." See Brzonkala, 132 F.3d at 961 (quoting Preston v. Commonwealth of Va. ex rel. New River Cmty. Coll., 31 F.3d 203, 207 (4th Cir. 1994)).





Here, Doe fails to provide specific arguments or evidence that would show he is likely to succeed on the merits of this claim. The only argument the court can find in Doe's various motions and pleadings that would address a Title IX claim is Doe's assertion that "Defendants evidenced a gender bias against [Doe] as the male accused throughout the investigative and hearing process." (Compl. ¶ 103, ECF No. 1 at 23.) However, Doe fails to identify "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." See Yusuf, 35 F.3d at 715. Allegations of such circumstances could entail "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender," but conclusory allegations of discrimination will not suffice. Brzonkala, 132 F.3d at 961-62 (quoting Yusuf, 35 F.3d at 715). Because Doe's allegation is merely conclusory and unsupported by specific factual allegations, the court finds Doe has failed to clearly show he is likely to succeed on the merits of this claim.

Based on the foregoing, Doe has failed to clearly show that he is likely to succeed on the merits of his federal claims. Thus, Doe fails to satisfy the first Winter factor.

**2. Irreparable Injury**

As to the second Winter factor, Doe alleges he will be harmed in numerous ways if the court does not grant preliminary relief. Chief among his concerns are that his suspension has resulted in the illegality of his presence in the United States, and the prospect of his deportation to Iran, his native country. Doe alleges that if he were to be deported to Iran, he could face legal trouble, including death, because of the allegations of sexual misconduct. Doe also argues the court should consider the harms he presently faces in the United States because of his suspension—the disruption of his pursuit of his Ph. D., the loss of his job at the University, and the resulting financial hardships.

However, even if this factor weighed in Doe's favor as to the preliminary injunction motion, because the court has already found that Doe has not clearly shown that he is likely to succeed on the merits of his claims, this factor is insufficient to warrant relief. See Real Truth, 575 F.3d at 347 (stating that Winter requires all four factors be satisfied as articulated to grant a motion for a preliminary injunction).

**3. Balance of the Equities & the Public Interest**

As to the third and fourth Winter factors,[14] the court finds that the competing interests between these parties reveal the balance of equities does not clearly tip to either side. As explained above, Doe's interests lie in regaining lawful immigration status in the United States, completing his academic work, and regaining his employment. But the University retains an interest in protecting the safety and order of its student body through its disciplinary procedures. See Goss, 419 U.S. at 591-93. The public interest aligns with the University's here and supports denial of the preliminary injunction as well. Notably, the law recognizes that federal courts should generally refrain from interfering in the affairs of state institutions of higher learning, absent some extraordinary justification. See id. at 578 ("Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities.") (quoting Epperson v. State of Ark., 393 U.S. 97 (1968)); Tigrett, 290 F.3d at 629 ("In the absence of a constitutional or statutory deprivation, the federal courts should be loathe to interfere with the organization and operation of an institution of higher education."). Thus, the third and fourth factors also do not warrant the

---

[14] Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 602 (4th Cir. 2017) (considering the balance of equity and public interest factors together), vacated and remanded on other grounds, 137 S. Ct. 2080 (2017).





extraordinary remedy of a preliminary injunction. Further, as noted above, because the court has already found that Doe has not clearly shown that he is likely to succeed on the merits of his claims, an injunction cannot be granted. See Real Truth, 575 F.3d at 347 (stating that Winter requires all four factors be satisfied as articulated to grant a motion for a preliminary injunction).

**RECOMMENDATION**

Based on the foregoing, the court recommends Doe's motions for a preliminary injunction be denied. (ECF Nos. 4 & 13.)

February 12, 2018
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).